**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| ) | No. 11 CR 879 |
| v. ) | |
| ) | Hon. Virginia M. Kendall |
| ANTHONY JONES. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

On December 15, 2011, a federal grand jury indicted Defendant Anthony Jones[1] in a one count Indictment charging that he distributed approximately 60 grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). He was convicted after a bench trial on October 8, 2013. Jones represented himself at trial, despite being given several opportunities to have court-appointed representation. *See United States v. Jones*, 2013 WL 3306434, at *2 (N.D. Ill. July 1, 2013). Soon thereafter, he filed the present Motion for a Judgment of Acquittal and a "Denial of Consent." For the reasons stated below, Jones's motions are denied.

**BACKGROUND**

**I.   Proceedings Before July 1, 2013**

The Indictment (Dkt. No. 1) charges that Jones distributed approximately 60 grams of a mixture and substance containing a detectable amount of cocaine base on July 8, 2010 in Joliet, Illinois. After Jones was indicted, he was arrested within the Northern District of Illinois on December 19, 2011.

---

[1] Although Jones refers to himself as "Jones-Bey" in his numerous filings before this Court, he was indicted and tried as Jones, and the Court therefore refers to him as Jones for continuity and clarity.

1

Jones was arraigned on December 20, 2011, and the Court appointed him counsel at this time. (Dkt. No. 8.) However, on January 23, 2012, appointed counsel moved to withdraw because she was unable to devote the time required to prepare Jones's defense. (Dkt. No. 16.) The Court granted her motion to withdraw and appointed a second attorney, from the Federal Defender program, to represent Jones on February 1, 2012. (Dkt. No. 18.) On October 19, 2012, this second attorney moved to withdraw due to irreconcilable differences, stating also that Jones directed her to file the motion to withdraw. (Dkt. No. 33.) A third attorney was provided to Jones on October 25, 2012. (Dkt. No. 35.)

In a status hearing on February 7, 2013, the third attorney informed the Court that he was experiencing difficulty working with Jones. (Dkt. No. 47; Transcript of February 7, 2013 Status Hearing, at 3, 5.) The difficulties persisted and the Court allowed this attorney to withdraw as Jones's attorney on March 4, 2013. (Dkt. No. 57.) At this time, the Court held a formal hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975), and informed Jones of the risks associated with representing himself. After explaining these risks, the Court offered Jones an opportunity to change his mind and to work and proceed with that attorney. Jones again declined representation, and the Court allowed him to represent himself *pro se*. The Court then appointed the third attorney to serve as standby counsel as Jones proceeded *pro se*. *Jones*, 2013 WL 3306434, at *3–4.

## II. Pre-Trial Proceedings

Shortly after Jones went *pro se*, he continued a practice that he started while represented by counsel—he filed numerous documents with the Court that were typically labeled "Affidavit of Truth and Fact." (*See, e.g.*, Dkt. Nos. 60–66.) At Jones's request, the Court treated the filings as a motion to dismiss the Indictment. The Court subsequently denied that motion on July 1,

2013. *Jones*, 2013 WL 3306434, at *5. Undeterred, Jones continued filing similar motions, all of which were ultimately rejected by the Court.

Meanwhile, the Government prepared for trial by filing proposed jury instructions and motions *in limine* on September 9 and 25. (Dkt. Nos. 92, 93, 97.) Jones responded to the Government's motion *in limine* by "denying consent" to it. (Dkt. No. 100.)[2] The Court rejected this objection as an improper challenge. (Dkt. No. 108.) On September 24, 2013, the Government mailed Jones its expert witness disclosures as required by Rule 16 of the Federal Rules of Criminal Procedure. (Dkt. No. 114-2.) The next day, it mailed Jones a copy of the phone transcripts it intended to use at trial (Jones had previously been given an identical copy in January 2012) and a page it inadvertently omitted from its expert witness disclosure letter. (Dkt. Nos. 114-1 and 114-3.) These documents were mailed to the same address Jones had specifically requested the Government use when corresponding with him since December 2012. (Dkt. No. 42 at p. 9.)

On October 1, 2013, the Court held a pretrial conference, during which it asked the Government to reply to Jones's various filings. The Government did so, and the Court denied each of Jones's substantive motions. (Dkt. Nos. 108, 109.) During a subsequent status hearing on October 3, 2013, the Court explained to Jones his right to jury trial and the logistics of how such a trial would be conducted. At this point, Jones waived his right to a jury trial and chose to have the Court determine his innocence or guilt after a bench trial. (Dkt. No. 107.)

---

[2] On the same date this Court received Jones's response, September 25, 2013, Jones filed a Petition for a Writ of Habeas Corpus under the case number 13 C 6910 (under the name Jones-Bey). That petition was dismissed as procedurally defaulted on January 21, 2014 because Jones did not directly appeal this Court's ruling. *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003) (Petitioner "never raised the issue on direct appeal and thus his argument is procedurally defaulted. A § 2255 motion is not a substitute for a direct appeal." (citing *Doe v. United States*, 51 F.3d 693, 698 (7th Cir.1995)).

## III. Trial

Jones's trial commenced on October 8, 2013. (Dkt. No. 110.) At the outset, Jones indicated that the Government rejected his offer in their plea negotiations, and that as such, he would not "participate[] in this procedure."[3] Jones did not give an opening statement or make a closing argument. The Government called as witnesses Special Agent Andrew Karceski, Special Agent Chris Labno, and Forensic Chemist Allison Kidder-Mostrom. Each witness put forth evidence supporting the Government's case that Jones knowingly distributed a cocaine base. Jones did not cross-examine any of these witnesses. When the Government moved to admit exhibits into evidence, the Court asked Jones if he had any objections, and each time—ten in total—Jones responded only that he objected to the "whole proceedings." And although not obligated to do so, Jones also did not present any evidence of his own when the Government rested its case. At the conclusion of the trial, the Court found Jones guilty beyond a reasonable doubt of distributing 60.2 grams of cocaine base (crack cocaine). Approximately one month later, Jones filed the present motions.

## DISCUSSION

## I. Rule 29 – Motion for a Judgment of Acquittal

A motion for judgment of acquittal under Rule 29 challenges the sufficiency of the evidence against a defendant. *See* Fed.R.Crim.P. 29 (requiring the Court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction").[4] In challenging the sufficiency of the evidence, Jones "bears a heavy, indeed, nearly insurmountable,

---

[3] The Court quotes Jones from a non-final version of the trial proceedings transcript.

[4] Although Jones does not expressly cite to Rule 29 or 33, he does not object to the Government's characterization of his motions as falling under those two rules. Jones's arguments relating to Docket Numbers 83, 84, 86, 88, 89, and 98 through 101 are again dismissed because the Court has already addressed and dismissed them in Docket Numbers 78, 108, 109.

4

burden." *United States v. Warren*, 593 F.3d 540, 546 (7th Cir. 2010); *see also United States v. Spaulding*, 366 F. App'x 670, 672 (7th Cir. 2010) (applying the same standard in to a bench trial). Such a motion should be denied if, after viewing the evidence in the light most favorable to the Government, "no rational factfinder, based on the evidence presented at trial, could find the defendant guilty beyond a reasonable doubt." *Spaulding*, 366 F. App'x at 672; *United States v. Hicks*, 368 F.3d 801, 804 (7th Cir. 2004); *see also United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (a conviction cannot be overturned unless "the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt.").

Here, the Government has presented sufficient evidence to find Jones guilty beyond a reasonable doubt. Video surveillance, phone records, and eyewitnesses identify Jones as selling 60.2 grams of crack cocaine to a confidential informant ("CI") in July 2010. The Government presented as evidence a recorded phone conversation between Jones and the CI in which Jones agreed to sell drugs to the CI. In the recording, Jones used coded language intended to conceal the true nature of the conversation. He used the intersection of 63rd and Halsted in Chicago to represent the amount of drugs (approximately 63 grams) and the time 17 o'clock to represent the cost ($1,700). Jones never went to that location, and the meeting between Jones and the CI took place at 2 p.m. Video surveillance of the meeting showed the CI giving Jones the money, and Jones placing an object on a porch. When he placed the object on the porch, Jones stated, "That's everything," and then said, "I'm gonna count it [the money he received from the CI] right now, before I leave." The CI gave the object to law enforcement, who used chemical analysis to determine the substance was cocaine base weighing 60.2 grams. Jones counters that the following facts make it impossible for any rational trier of fact to find him guilty beyond a reasonable doubt:

- (1) The portion of the video the prosecutor showed leaves much room for doubt, here the video plainly shows the "CI" (Ryan Britton) reaching into his pocket and pulling out a white object [*sic*] to anyone, then dropping it in plain sight on the ground and retrieving it.

- (2) The governments [*sic*] allegation that Jones-Bey placed something on the porch is unfounded, it never showed him reaching in his pocket, placing anything down or any items in his hand at no time, leaving room for doubt as to the government fabrication of the event.

- (3) The statement they have interpreted to their benefit, is ambiguous. Saying "is that everything" does not imply that the accused handed any items to the "CI", but the opposite. Once again without the actual transaction being verifiable as to what was given and recieved [*sic*] from whom, the governments leave reasonable doubt as to their argument.

- (4) The government showed only a small portion of the video entered into evidence. The video was more than 25-30 minutes in duration, the parts not shown is the length of time the CI was on the porch fumbling and eventually communicating with people inside his residence. They never showed the individuals he passed on the street returning to the assigned area to meet the agent, or the white object in one of the individual[']s hand. The government saying that the "CI" never encountered anyone is false; the video showed several opportunities for the "CI" to gain possession of the drugs, or stash the money.

- (5) The government witnesses never said they checked his residence, or the area where he sat for any illegal substance, just his person at the assigned meeting place, like a person working out a deal for his freedom, and a convicted obstructer of justice would bring drug to their meet. The implication of such an act is absurd.

- (6) Also in the video the court admitted into evidence upon further review, it would have revealed the conversation between the CI and the Agent, in which the agent admitted never seeing the alleged transaction even occur; but sat on the stand and told the Judge he and Cardwell was in constant surveillance of Mr. Britton. On the video the agent asked had the transaction occured? Then the CI responded "you didn't see it", then gave him his version of the event in violation of the Confrontation Clause, taking precaution to not implicate himself as a fraud, and of course

- alleviating the truth, for the sake of his exoneration for the crimes he committed in exchange for his participation.

- (7) To add more reasonable doubt he even tells the Agent that "I got the money and the drugs" (25:40).

- (8) Also in the video it shows many other instances were the surveillance was less than appropiate [*sic*] for a controlled operation, including the fact that the van was never stopped and the alleged buy money, (that was supposedly pre-recorded) taken from Jones-Bey's person; neither were the drug witnessed (by this "tight control") being received from his hand, even with the recording device on the CI's person.

- (9) More doubt to the events in question is raised by the alleged drugs never being handed over immediately to the agent according to protocol of a "Controlled Buy".

- (11) . . . Even the Agent Labno testimony left room for doubt and is why it was objected to immediately. Stating that saying "63rd and Halsted" is a drug term commonly used in drug transactions. That accusation would have weight [*sic*] if it the location was fictitious and not an actual street that is frequented everyday by thousands of people.

(Dkt. No. 118 at pp. 2–4 (the Court changed Jones's brackets to parentheses to distinguish between Jones's writing and the Court's non-substantive alterations).)

First, these arguments are waived because Jones did not make them in the opening brief for this motion. *United States v. Blaylock*, 413 F.3d 616, 619 (7th Cir. 2005) (arguments not made in opening brief are waived (citing *United States v. Harris*, 394 F.3d 543, 559 (7th Cir. 2005) and *United States v. Stevens*, 380 F.3d 1021, 1025 (7th Cir. 2004)). Jones has never mentioned these arguments to this Court in any way before this reply brief, and because he makes no effort to explain why he withheld this information, the Court seriously doubts its veracity.

Adding to the Court's doubt is that, rather than argue these points before or during his trial, Jones chose to object to the "whole proceedings" based on his frequently raised and frequently rejected "sovereign citizen" arguments. The Court again reminds Jones that these arguments, which challenge this Court's jurisdiction because Jones's religion conveys upon him citizenship akin to a sovereign nation, are frivolous and without merit. *Jones*, 2013 WL 3306434, at *5. *See also United States v. Benabe*, 654 F.3d 753, 767 (7th Cir. 2011); *United States v. Burke*, 425 F.3d 400, 408 (7th Cir. 2005); *United States v. Hilgeford*, 7 F.3d 1340, 1342 (7th Cir. 1993); *United States v. Sloan*, 939 F.2d 499, 500–01 (7th Cir. 1991); *United States v. Schneider*, 910 F.2d 1569, 1570 (7th Cir. 1990). No judge in the United States District Court for the Northern District of Illinois has ever ruled otherwise. *E.g.*, *United States v. Mack*, 2013 WL 4495641, at *3 (N.D. Ill. Aug. 21, 2013) (Dow, J.); *Blake-Bey v. Vill. of S. Holland*, 2011 WL 5588773, at *3 (N.D. Ill. Nov. 15, 2011) (Lefkow, J.); *Blake-Bey v. Cook Cnty.*, 2011 WL 760074, at *3 (N.D. Ill. Feb. 24, 2011) (Der-Yeghiayan, J.); *Thornton-Bey v. United States*, 2009 WL 203502, at *1 (N.D. Ill. Jan. 26, 2009) (Darrah, J.); *United States v. Delatorre*, 2008 WL 312647, at *2 (N.D. Ill. Jan. 30, 2008) (Castillo, J.); *Momient-El v. State of Ill.*, 1992 WL 220586, at *2 (N.D. Ill. Sept. 4, 1992) (Duff, J.). Making "sovereign citizen" arguments over and over again will at best not persuade the Court, and at worst distract Jones from focusing on putting the Government to its burden of proof.

Second, the insufficiency of the evidence arguments Jones makes in his Reply do not meet the heavy burden of showing that no rational factfinder could have found Jones guilty beyond a reasonable doubt. The gist of Jones's arguments is that the video footage does not prove his guilt beyond a reasonable doubt. But Jones was convicted after a bench trial, during which the Court viewed the video footage with its own eyes. It found that the video footage,

combined with the recorded phone conversation of Jones planning the transaction and credible eyewitness testimony, was more than sufficient to prove Jones's guilt beyond a reasonable doubt. Showing a longer portion of the video with scenes that do not depict the transaction would not have altered the Court's decision.

**II.      Rule 33 – Motion for a New Trial**

A motion for a new trial under Rule 33(a) should be granted only if required "by the interest of justice." Fed.R.Crim.P. 33(a). Such motions should be granted sparingly and are only appropriate if "substantial rights of the defendant have been jeopardized by errors or omissions during trial." *United States v. Kuzniar*, 881 F.2d 466, 470 (7th Cir. 1989). A defendant is entitled to a new trial only if there is a reasonable possibility that a trial error had a prejudicial effect upon the jury's verdict. *See United States v. Berry*, 92 F.3d 597, 600 (7th Cir. 1996).

Jones argues the Government violated Federal Rules of Criminal Procedure 16(a)(1)(E)(i)–(iii), 16(a)(1)(G) by failing to provide him with certain documents and information in a "timely manner," which hindered his ability to prepare his defense and rebut the information contained in those documents. Rule 16(a)(1)(E)(i)–(iii) states:

> **(E) Documents and Objects.** Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> (i) the item is material to preparing the defense;
>
> (ii) the government intends to use the item in its case-in-chief at trial; or
>
> (iii) the item was obtained from or belongs to the defendant.

9

Rule 16(a)(1)(G) adds, in pertinent part:

> **(G) Expert witnesses.** At the defendant's request, the government must give to the defendant a written summary of any testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial. . . . The summary provided under this subparagraph must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications.

A violation of Rule 16 amounts to prejudice sufficient to warrant a new trial under Rule 33 if a defendant was "unfairly surprised by the evidence and cannot adequately prepare his defense or when the violation has a substantial influence on the jury." *United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007) (citing *United States v. Stevens*, 380 F.3d 1021, 1026 (7th Cir. 2004)). Jones argues he received the following documents and information too late to adequately prepare his defense:

(1) The Government's September 25, 2013 Motion *In Limine* (Dkt. No. 97);

(2) A transcript of the recorded conversation the Government used at trial;

(3) One page from Kidder-Mostrom's testing results that was inadvertently omitted from the first set of these results the Government sent to Jones;

(4) Notice that the Government would call Special Agent Chris Labno to testify;

(5) Notice the Government would call Allison Kidder-Mostrom to testify; and

(6) A summary of what Ms. Kidder-Mostrom would testify to as an expert.

(Dkt. No. 112 at p. 2.)

As a preliminary matter, Jones has waived these (and all) evidentiary arguments that he did not specifically raise before or during the trial. *United States v. Hack*, 205 F.2d 723, 727 (7th Cir. 1953) ("Where defendant does not object to the admission of objectionable evidence during the trial, such objection is waived and *cannot be raised for the first time on motion for a new trial* (or) on appeal." (emphasis added)). *See also United States v. Swan*, 486 F.3d 260, 264 (7th Cir. 2007) ("In order to preserve an objection for appeal under Federal Rule of Evidence 103(a)(1), '[t]he specific ground for reversal of an evidentiary ruling on appeal must also be the same as that raised at trial.'" (quoting *United States v. Wynn*, 845 F.2d 1439, 1442 (7th Cir. 1988)). Jones argues that he did, in fact, preserve his objections because he "'objected' to the whole proceedings several times during and before the trial." (Dkt. No. 118 at p. 5.) It is true that Jones did make this objection numerous times, but the Court considered and rejected it each time it was raised, just as it must when "sovereign citizen" arguments are made. *Benabe*, 654 F.3d at 767. Although Jones concedes that he received all these documents before his trial began, (Dkt. No 118 at p. 4), he did not raise the issue of their timeliness to the Court at any point, despite ample opportunity to do so when he was physically present in the courtroom for his two pretrial conferences and the trial itself. Indeed, Jones opted for a bench trial, and therefore could have easily raised this point to the Court during these appearances before it. Nor did Jones make any other arguments about the facts or evidence presented at trial that he now raises in the present motion. As such, these arguments are waived.

Additionally, the timing of the Government's Rule 16 disclosures did not prejudice Jones. First, as the Government highlights and Jones concedes, he received all of the documents at least five days before his trial began. This is ample time to review the relatively small amount of materials produced. *United States v. Tucker*, 371 F. App'x 676, 678 (7th Cir. 2010) (finding that

one week to review less than 50 pages of records was sufficient under Rule 16 and did not hamper defendant's preparation); *United States v. Lopez-Gamez*, 172 F.3d 877 (9th Cir. 1999) (unpublished) (holding that five and eight days to review evidence did not violate defendant's rights, in part because defendant did not explain why more time would have assisted in his defense). Second, Jones cannot argue that lacking these documents more than five days before the trial harmed the preparation of his defense because he presented no defense at all during his trial. He made no opening statement, did not cross-examine any of the Government's witnesses, did not present any of his own evidence, and made no closing argument. Jones does not argue that he would have participated in the trial but for the late delivery of these materials. Nor does he explain how the outcome would have changed or what he would have done differently if he had more time with them. Jones not having enough time to review documents he never intended to use could not have prejudiced him.

In truth, Jones received the documents more than five days before the trial, but at no point did he inform the Government or the Court that such an amount of time was insufficient to prepare his defense. Rather, and throughout the two full years Jones's case has been pending before this Court, Jones was only interested in objecting to the constitutional legitimacy of the proceedings themselves, which are, again, wholly frivolous. *Benabe*, 654 F.3d at 767. The Court therefore denies Jones's motion for a new trial.

## **CONCLUSION**

For the reasons set forth above, the Court denies Jones's Motion for Acquittal (Dkt. No. 113) and his motion for a new trial (Dkt. No. 112).

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: February 11, 2014